```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Daniel Perez

    v.                                      Civil No. 19-cv-372-JD
                                            Opinion No. 2020 DNH 183

Warden, New Hampshire
State Prison

## O R D E R

Daniel Perez, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254. In support, he contends that, during his criminal trial in state court, evidence was used against him in violation of his Miranda[1] rights, that the court should have disclosed additional information that was reviewed in camera, and that the court illegally changed his sentence. The Warden moves for summary judgment on Perez's claims. Perez did not file a response to the motion.

### Standard of Review

A court shall grant a writ of habeas corpus under § 2254 "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). As long as the claim was adjudicated on the merits in state court, the writ cannot be granted based on a

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

legal or factual error, and instead the court applies a deferential standard. Gomes v. Silva, 958 F.3d 12, 19 (1st Cir. 2020). When a claim was properly presented to the state court but not adjudicated on the merits, this court reviews the claim under the de novo standard instead of the deferential review provided under § 2254(d). Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010); Fortini v. Murphy, 257 F.3d 39, 47 (1t Cir. 2001).

A claim is adjudicated on the merits if the claim was decided on the substance presented, rather than on a procedural ground, and the decision has res judicata effect. Linton v. Saba, 812 F.3d 112, 122 (1st Cir. 2016). Further, a claim is adjudicated on the merits, although the decision is "framed in terms of state law . . . as long as the state and federal issues are for all practical purposes synonymous and the state standard is at least as protective of the defendant's rights as its federal counterpart." Id.

Under the deferential standard, a writ may be granted when the state court's adjudication of the petitioner's federal constitutional claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Alternatively, a writ may be

granted if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). For purposes of that showing, "a determination of a factual issue made by a State court shall be presumed to be correct." § 2254(e)(1).

A petition for a writ of habeas corpus under § 2254 ordinarily is decided based on the existing record. A hearing will be held only in limited circumstances. § 2254(e)(2); Jackson v. Marshall, 864 F.3d 1, 14 (1st Cir. 2017). Those circumstances have not been shown to exist here, and therefore a hearing was not held.

## Background

The background facts are taken from the transcript of the hearing on Perez's motion to suppress, document no. 13 filed conventionally; the New Hampshire Supreme Court's decision, State v. Perez, Case No. 2016-0271, 2017 WL 4341420 (N.H. Aug. 1, 2017); exhibits filed by Perez with the petition, document no. 1, and documents filed by the Warden with the answer, document no. 12.

When the events leading to his arrest occurred, Perez was staying with his girlfriend and her children. His girlfriend's

ten-year-old daughter, "Y", accused him of sexually assaulting her and provided accounts of sexual assault by Perez during an interview at the Child Advocacy Center. Salem Police Detective Geha investigated the allegations of sexual assault.

Geha called Perez on June 24, 2014, to arrange to speak with him and asked Perez to come to the police station. Once there, Perez was taken to an interview room. Detective Ryan Sambataro joined them. Geha talked to Perez in English, and Perez had no trouble understanding him. Perez also responded in English, in complete sentences, and Geha had no trouble understanding him. Although Geha can speak Spanish, he saw no need to conduct the interview in Spanish.

Geha told Perez he was free to leave at any time. Geha read the five rights stated on a Miranda form to Perez, line by line, asking Perez if he understood each right as he read it, and Perez responded that he did. Geha did not read the waiver section of the form.[2] Geha asked Perez if he were willing to talk with him about the allegations of sexual assault. Perez said he was and signed the waiver section of the form.

---

[2] During the suppression hearing, an issue arose as to whether Geha remembered giving Perez the Miranda form to let him read the waiver section himself. The judge noted that it was a poorly documented interview. Whether or not Geha remembered giving the form to Perez for him to read the waiver section, it is undisputed that Perez signed the waiver, which shows that he was given the form and saw the waiver.

4

To begin the interview, Geha told Perez that Y had accused him of touching her genitals, her chest, and her buttocks. Perez responded by saying that he did not remember. Sambataro left the interview room, and Geha continued the interview.

As the interview progressed, Perez seemed more comfortable. After an hour to an hour and a half, Perez admitted that Y was telling the truth. Geha then asked Perez if he could turn on the recording equipment, and Perez agreed. Geha again asked Perez, during the recorded part of the interview, if he understood his rights, and Perez answered that he did.

Before his criminal trial, Perez moved to suppress the statements he made to Detectives Geha. In support, he argued that he did not knowingly, intelligently, and voluntarily waive his Miranda rights. He argued that he had limited education and a learning disability but did not present evidence to establish those facts. The trial court denied the motion. Perez's statements to Geha were introduced into evidence at trial.

Although Perez did not testify during the suppression hearing, he did testify at trial. There, Perez testified that he could not read or write well and then said that he did not know how to read. He testified that he told Geha that he could not read, but Geha told him to sign the Miranda form anyway.

Perez was convicted on one count of aggravated felonious sexual assault, one count of attempted aggravated felonious sexual assault, and three counts of felonious sexual assault. He was sentenced to three and a half to ten years in prison on each charge of felonious sexual assault, to be served concurrently. His sentence on attempted aggravated felonious sexual assault was suspended.

On appeal, Perez argued that although Geha carefully read the Miranda rights and determined that Perez understood them, he did not read the waiver of rights section or determine that Perez understood the waiver of his Miranda rights. He also argued that the trial court erred in failing to disclose documents that were reviewed by the court in camera. The New Hampshire Supreme Court "address[ed] the suppression issued under the State Constitution and rel[ied] upon federal law only to aid [the] analysis." Perez, 2017 WL 4341420, at *2. It addressed the issue of in camera review under the state law standard. Id. The trial court's decision was affirmed.

The state filed an application for review of Perez's sentence. On January 2, 2019, the sentencing review board increased Perez's sentences to seven and a half to fifteen years in prison on the felonious sexual assault charges, to be served concurrently, and did not change the sentence on attempted

6

aggravated felonious sexual assault.  His petition to the New Hampshire Supreme Court for a writ of certiorari was denied on May 3, 2019.

Perez filed his habeas petition in this court on April 11, 2019.  On preliminary review and after amendment, the court allowed the following claims:

> (1) Statements he made to the Salem police were used against him, after his motion to suppress was denied, although he did not make a knowing, intelligent, and voluntary waiver of his Miranda rights.
>
> (2) The trial court reviewed potentially exculpatory confidential information in camera but did not disclose it.
>
> (3) The superior court illegally changed Perez's sentence.

See Docs. nos. 7, 9, and 10.

The Warden moved to have this court review, in camera, the documents that are the subject of Perez's claim number 2.  The motion was granted.  Doc. no. 15.  Those documents were sent to the court by the clerk of court of the Rockingham County Superior Court and were docketed, under seal, on October 9, 2020.  Doc. no. 21.

## Discussion

The Warden moves for summary judgment on all three of Perez's claims.  In support, he contends that the New Hampshire

Supreme Court applied the appropriate legal standards in concluding that Perez's statements were not used in violation of his Miranda rights and that Perez's sentence was not changed illegally. With respect to the claim pertaining to the documents reviewed in camera, the court will also review the documents in camera to determine whether the New Hampshire Supreme Court's decision was contrary to or an unreasonable determination of federal law.

A. Miranda Rights

Perez contends that his Miranda rights were violated because the police ordered him to sign a Miranda waiver that he could not read due to his severe learning disabilities and then his statements were used against him at trial. More specifically, Perez contends that he did not knowingly waive his rights because Detective Geha did not read the waiver section to him and he was unable to read it to himself. The government moves for summary judgment on that claim, arguing that the New Hampshire Supreme Court's decision affirming denial of his motion to suppress is neither contrary to nor an unreasonable application of clearly established federal law.

Under clearly established federal law, "most statements made by a suspect during a custodial interrogation are

inadmissible at trial absent a valid waiver of Miranda rights." United States v. Carpentino, 948 F.3d 10, 25 (1st Cir. 2020).  A waiver of Miranda rights is valid, if "appraised in light of all the circumstances, the waiver was both knowing and voluntary." Id. at 26.  To be a knowing waiver, the suspect must have "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon." Id.  That is, "[t]o show a knowing waiver, the government need only demonstrate that the defendant knew that he could remain silent and request a lawyer and that his statements could be used against him." Id. at 30.  The government bears the burden of showing by a preponderance of the evidence that the suspect knowingly waived his rights.  Id. at 26.

In this case, there is no dispute that Perez understood his protected rights, as provided on the Miranda form and read to him.  The issue is whether he knowingly waived those rights by signing the waiver form, which was not read to him and which he says he could not read himself.

On appeal, the New Hampshire Supreme Court noted that Perez produced no evidence at the suppression hearing that he could not read.  Perez, 2017 WL 4341420, at *2.  Although Perez testified at trial about his inability to read, because he did not renew his motion to suppress at trial, the review of the

9

denial of his motion to suppress was limited to the evidence presented at the suppression hearing.  Id.  Based on that record, the supreme court held that the government proved beyond a reasonable doubt that Perez's waiver of his Miranda rights was intelligent, knowing, and voluntary.  Id.

Perez does not challenge the factual basis of the New Hampshire Supreme Court's decision.  He argues that on those facts his waiver was not made knowingly.  The record shows that Perez understood his Miranda rights.  Further, after Perez was informed of those rights, Geha asked Perez if he were willing to talk to him about the accusations and Perez agreed to do so. Once Perez agreed to talk, Geha gave Perez the Miranda form to sign, and he signed the form in the appropriate place.

The state standard applied by the supreme court requires a higher burden of proof for the government than does the federal standard.  Based on that higher standard, the New Hampshire Supreme Court concluded that Perez intelligently and knowingly waived his Miranda rights.  Perez has not shown that the supreme court's decision was an unreasonable application of or contrary to federal law.

B.  In Camera Review

The trial court ordered that Y's school records and records from the Massachusetts Department of Children and Family Services be submitted for in camera review.  The court then reviewed the records, in camera, and the records that it deemed to be essential and reasonably necessary to Perez's defense.  Some of the records, which the trial court determined did not meet that standard, were not disclosed.  The New Hampshire Supreme Court affirmed that decision after its own in camera review of the undisclosed records.

Perez contends that the decision not to disclose those records violated federal law because the undisclosed records were potentially exculpatory in that they may have included information that showed Y had a motive to lie.  Specifically, he contends that the undisclosed documents may have supported his defense theory that Y falsely alleged the assaults in order to be removed from her mother's home.[3]  He sought information that showed Y wanted to be removed, her knowledge about reasons for removal, and her mood in late May of 2014.

A criminal defendant is entitled under the due process clause of the Fourteenth Amendment to information that is

---

[3] That argument was made in his appeal to the New Hampshire Supreme Court, and Perez submitted that brief in support of his habeas petition.

11

favorable to his defense and material to his guilt or punishment.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  Such information includes information that could be used to impeach a government witness.  United States v. Bagley, 473 U.S. 667, 676 (1985).

Under New Hampshire law, a criminal defendant is entitled to have privileged or confidential materials reviewed in camera by the court if he shows a reasonable probability that the information is material and relevant to his defense.  State v. Gagne, 136 N.H. 101, 104 (1992).  Privileged and confidential materials will be disclosed only if they are "essential and reasonably necessary to the defense at trial."  State v. Guay, 162 N.H. 375, 385 (2011); see also State v. Girard, Case No. 2018-0608 (N.H. Oct. 16, 2020).  The standard of essential and reasonably necessary was recently clarified to require the reviewing judge to determine whether the materials in fact contain material and relevant evidence.  Id. at *8.

This court also has reviewed the in camera documents that were not disclosed by the trial court, along with the documents that were disclosed.  The undisclosed documents do not include any different information that is favorable and material to Perez's guilt or punishment or that could have been used to impeach a government witness during his trial.  Therefore, Perez

has not shown that the New Hampshire Supreme Court's decision affirming the trial court's ruling following in camera review was contrary to or an unreasonable application of federal law.

C. Sentence Increase

Perez contends that the state illegally changed his sentence to a longer term of imprisonment. He raised that claim in his petition for a writ of certiorari to the New Hampshire Supreme Court, seeking to appeal the Sentencing Review Board's decision. In his brief in support of the petition, Perez acknowledged that the sentence review process was constitutional. He argued, however, that in his case there was an impermissible delay in issuing the sentencing decision.[4]

The New Hampshire Supreme Court denied Perez's petition, referencing Rule 11 of the Rules of the Supreme Court of the State of New Hampshire. Rule 11 provides the requirements for a petition for original jurisdiction, which includes the provision that such petitions "shall be granted only when there are special and important reasons for doing so." In addition to

---

[4] Although the Warden provided a copy of the brief with his answer, he did not address the arguments raised there. Instead, the Warden addressed the claim as a challenge to the legality of the increase under New Hampshire sentencing laws. That does not appear to be the claim that Perez has raised.

substantive conditions, the rule requires that certain procedures be followed.

The claim was not adjudicated on the merits by the New Hampshire Supreme Court, which only would have occurred if the petition had been granted so that the court heard the appeal. The New Hampshire Supreme Court's general reference to Rule 11 does not show that the petition was denied on procedural grounds. Therefore, the court will review the sentencing claim under the de novo standard.

In his brief in support of the petition for a writ of certiorari, Perez relied on State ex rel. McLellan v. Cavanaugh, 127 N.H. 33, 37-40 (1985), for the proposition that due process and the right to a speedy trial (under both the state and federal constitutions) require a speedy disposition of the case after trial and that a delay in sentencing could violate those rights. The United States Supreme Court, however, has since held that the Sixth Amendment right to a speedy trial does not pertain to post-conviction delays in sentencing. Betterman v. Montana, 136 S. Ct. 1609, 1613 (2016). At that stage, "[t]he primary safeguard comes from statutes and rules." Id. at 1617 (citing, among other rules, N.H. Rule Crim. Proc. 29(a)(1) (2016)). In addition, the due process clause of the Fourteenth Amendment "serves as a backstop against exorbitant delay." Id.

14

The Supreme Court did not apply the due process standard in Betterman because the defendant had not raised that ground for relief.  The Supreme Court stated, however, that "[r]elevant considerations may include the length of and reasons for delay, the defendant's diligence in requesting expeditious sentencing, and prejudice."  Id. at 1618, n.12.  In her concurrence, Justice Sotomayor cited the same factors, which are provided in Barker v. Wingo, 407 U.S. 514, 530 (1972), and stated that the Barker factors would be the appropriate test for whether sentencing delays violated due process.  Id. at 1619.

Prior to the ruling in Betterman, the First Circuit used the four Barker factors provided to determine whether a sentencing delay violated the Sixth Amendment, but the First Circuit has not had the opportunity to address the issue after Betterman.  United States v. Carpenter, 781 F.3d 599, 608 (1st Cir. 2015).  The Third Circuit has held, after Betterman, that the four Barker factors apply to determine whether a delay in sentencing caused a due process violation.  United States v. Lacerda, 958 F.3d 196, 219 (3d Cir. 2020); see also United States v. Yupa Yupa, 796 F. App'x 297, 299 (7th Cir. 2020).  The four Barker factors are:  "the length of the delay, the reason for the delay, the defendant's assertion of the right to a speedy trial, and whether the defendant has been prejudiced by

15

the delay." Carpenter, 781 F.3d at 608; accord Lacerda, 958 F.3d at 219-20.

Applying the Barker factors here, Perez has not shown that the delay in the Sentencing Review Board's decision violated his right to due process. Perez argued in his brief in support of his petition for a writ of certiorari that the delay in issuing the decision to increase his sentence, which was imposed more than two and a half years after his original sentencing, was too long and was caused by the government.

To implicate due process rights, however, delay must be "the product of bad faith reasons." United States v. Irizarry-Colon, 848 F.3d 61, 70 (1st Cir. 2017). While the delay between Perez's initial sentencing and the Sentence Review Board's decision was lengthy, Perez has not shown that it was caused by the government's bad faith. The government moved to stay the proceeding before the Sentencing Review Board, pending the outcome of Perez's appeal, which was granted. The record does not show that Perez objected to the stay, otherwise attempted to move the proceedings along more quickly, or raised the issue of a delay in the sentencing review proceeding at any time before the decision issued. Because the appeal put the conviction in question, it was reasonable to delay the sentence review until after that proceeding concluded.

Perez argued that he suffered extreme prejudice as a result of the increase in his sentence. In support, he states that, when the Sentencing Review Board's decision issued, he was within four months of his minimum parole date and had been changed to minimum security status so that he lived outside of the prison. As a result of the increase in his sentence, his parole date change, his inmate status was changed to a higher security level, and he was returned to the prison.

As Perez plainly states, the changes in his parole date and security status, which caused a change in his living situation, were the result of his increased sentence. Perez does not allege or show that the delay in issuing the decision that increased his sentence caused those changes. Because Perez has not shown that the delay in the Sentencing Review Board's decision violated his right to due process, that claim fails.

## Conclusion

For the foregoing reasons, the Warden's motion for summary judgment (document no. 17) is granted. Perez's claims brought in support of his petition for a writ of habeas corpus are dismissed.

Because Perez has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability.  28 U.S.C. § 2253(c)(2).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                          */s/ Joseph A. DiClerico, Jr.*
                                          Joseph A. DiClerico, Jr.
                                          United States District Judge

October 20, 2020

cc: Daniel Perez, pro se
    Elizabeth C. Woodcock, Esq.